IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY J. STAR, et al.          :          CIVIL ACTION
                                 :
          v.                     :
                                 :
LAWRENCE J. ROSENTHAL, et al.    :          NO. 11-7278

<u>MEMORANDUM</u>

Dalzell, J.                                      August 9, 2012

Plaintiffs Gregory J. and Luba Star (collectively, the "Stars") bring suit against defendants Lawrence J. and Phyllis B. Rosenthal[1] (collectively, the "Rosenthals"), asserting several Pennsylvania state-law claims arising out of the Stars' purchase of a house from the Rosenthals.

The Stars allege that this home proved subject to water infiltration. They further claim that though the Rosenthals knew the house had this defect, the Rosenthals nonetheless made false representations to the Stars in order to induce them to buy the house and later to refrain from bringing suit.

Specifically, the Stars allege six claims[2] against the Rosenthals: (1) violation of Pennsylvania's Real Estate Seller Disclosure Law ("RESDL"), 68 Pa. Cons. Stat. Ann. §§ 7301, <u>et</u>

---

[1] The docket lists the latter defendant's name as "Phyllis B. Rsenthal," in obvious error.

[2] Because the amount in controversy exceeds $75,000 and the parties are completely diverse, we have jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

seq.; (2) fraudulent misrepresentation; (3) violation of
Pennsylvania's Unfair Trade Practices and Consumer Protection Law
("UTPCPL"), 73 Pa. Stat. §§ 201-1, et seq.; (4) negligent
misrepresentation; (5) breach of contract; and (6) unjust
enrichment.  The Stars plead their fifth and sixth counts in the
alternative to the other claims they present.

The Rosenthals have filed a motion to dismiss all claims
in the complaint, to which the Stars have responded.  For the
reasons we discuss below, we will grant the Rosenthals' motion to
dismiss in part, as to Count I of the complaint, and will direct
them to file an answer to the remaining allegations of the
complaint.

## I.  **Factual Background**

In ruling on a motion to dismiss for failure to state a
claim pursuant to Fed. R. Civ. P. 12(b)(6), we must "'accept all
factual allegations in the complaint as true and give the pleader
the benefit of all reasonable inferences that can be fairly drawn
therefrom.'"  Ordonez v. Yost, 289 Fed. Appx. 553, 554 (3d Cir.
2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.
1993)).  We may "'consider only allegations in the complaint,
exhibits attached to the complaint, matters of public record, and

documents that form the basis of a claim,'" <u>Brown v. Daniels</u>, 128
Fed. Appx. 910, 913 (3d Cir. 2005) (quoting <u>Lum v. Bank of
America</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004)), where a document
forms the basis of a claim if it is "integral to or explicitly
relied upon in the complaint."  <u>In re Burlington Coat Factory Sec.
Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis and internal
quotation marks omitted).  As our Court of Appeals has explained,
this means that we may "consider an undisputedly authentic
document that a defendant attaches as an exhibit to a motion to
dismiss if the plaintiff's claims are based on the document."
<u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998
F.2d 1192, 1196 (3d Cir. 1993).  Since the Stars' complaint relies
in part on certain documents, we will review both the allegations
of the complaint and the features of those documents that are
material to the Rosenthals' motion to dismiss.

        According to the Stars, they are husband and wife living
at 1708 Brittany Drive in Ambler, Pennsylvania, while the
Rosenthals are husband and wife living in West Palm Beach,
Florida.  Pls.' Compl. ¶¶ 2-3.  The Stars aver that on August 21,
2008 they entered into an Agreement of Sale (the "Agreement") with
the Rosenthals to purchase the Rosenthals' residential property
(the "house") located at 1708 Brittany Drive in Ambler.  The

Rosenthals had lived in the house continuously from its construction in 1987 until its sale to the Stars.  Id. ¶¶ 4-6.

The Agreement provided that "[t]he following are part of this Agreement if checked: . . . Seller's Property Disclosure [checked]."  Ex. A to Pls.' Compl. ("Agreement") § 34; see also Pls.' Compl. ¶ 7.  The Seller's Property Disclosure Statement (the "Disclosure") that the Rosenthals provided to the Stars included the following questions: (1) "Are you aware of any water leakage, accumulation, or dampness within the basement or crawl space?," Ex. B to Pls.' Compl. ("Disclosure") § 4(b); (2) "Are you aware of any fire, storm, water, or ice damage to the property?," id. § 6(f); (3) "Do you know of any past or present drainage or flooding problems affecting the property?," id. § 16(b)(2); (4) "Are you aware of any insurance claims filed relating to the property?," id. § 19(g); and (5) "Are you aware of any material defects to the property, dwelling, or fixtures which are not disclosed elsewhere on this form?"  Id. § 19(h).  The Rosenthals checked "No" in response to each of these questions.  Id. §§ 4(b), 6(f), 16(b)(2), 19(g)-(h); see also Pls.' Compl. ¶¶ 8, 10-13.  The Disclosure also included the question, "Are you aware of any past or present water leakage in the house or other structures?", and in response the Rosenthals checked "Yes" and wrote "upstairs hall bathroom windows

4

leaked, replaced in 1993."  Disclosure § 6(a); see also Pls.'
Compl. ¶ 9.

The Stars further allege that during a September 3, 2008
home inspection they attended with an (unnamed) inspector they had
hired, Lawrence Rosenthal "specifically denied any water
infiltration in the basement of the House."  Pls.' Compl. ¶ 19.
During the same inspection, when Lawrence heard the inspector say
that "any signs of water penetration in the basement occurred
while the House was being built and before it was fully enclosed,"
he did not correct this statement.  Id. ¶ 20.

According to the Stars, in the summer of 2009 "the area
experienced heavy directional rain and wind which pounded against
the front of the House," causing "water to literally flow over the
front wall of the basement of the House," Id. ¶ 15.  During each
subsequent storm involving heavy directional rain, water flowed in
and through the living room windows, in and around the front door,
and over and through the front wall of the basement of the house.
Id. ¶¶ 16-17.  Nonetheless, during an October, 2009 visit by the
Rosenthals at which the Stars recounted their recent experience of
basement water infiltration, the Rosenthals denied having had any
prior water infiltration.  Id. ¶ 18.

The Stars claim that in the summer of 2011 they discovered files in the house's basement -- titled "Lib. Mut. -- Claim -- 90-91" and "LM/Cutler Lawsuit 91-92" -- that the Rosenthals had left behind. <u>Id.</u> ¶¶ 21-22. The Stars allege that these files demonstrate that the Rosenthals experienced significant and persistent water infiltration throughout the house and that they filed an insurance claim and lawsuit related to this infiltration. <u>Id.</u> ¶ 23. The Stars also aver that during that same summer they found photographs dated between 1990 and 1992 that the Rosenthals had taken of extensive water infiltration through the windows, front door, and basement of the house that mirrored the infiltration the Stars experienced. <u>Id.</u> ¶ 25.

The Stars allege that each of the Rosenthals' answers on the Disclosure was false, and that the Rosenthals knew them to be false at the time they made them.[3] <u>Id.</u> ¶¶ 14, 26-30. The Stars claim that had they "been told the truth about the extensive and persistent water infiltration to which the House had been subjected for more than 20 years, they would not have purchased the House." <u>Id.</u> ¶ 31. They thus suggest that they have suffered

_____

[3] The Stars elaborate that the Rosenthals' response to Disclosure § 6(a) was "purposefully incomplete" and designed to "create[] the appearance of candor as a means to gain the Stars' trust and confidence." <u>Id.</u> ¶ 30.

damages that include: (1) the purchase price of the house; (2) all improvements to the house made since its purchase; (3) all other costs associated with purchasing and maintaining the house; (4) all costs associated with remediation efforts aimed at stemming the flow of water into the house; (5) diminution in the value of the house; (6) "mental anguish, anxiety, and emotional distress"; and (7) "such other further injuries and damages as will be demonstrated through discovery of this matter." Id. ¶ 35.

Notably, the Agreement contains the following release language at § 27:

> Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property.  Should Seller be in default under the terms of this Agreement, or in violation of any seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity.  This release will survive settlement.

## II. __Analysis__

The Supreme Court has explained that "only a complaint that states a plausible claim for relief survives a motion to dismiss" pursuant to Rule 12(b)(6), leading a reviewing court to engage in a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense." __Ashcroft v. Iqbal__, 129 S. Ct. 1937, 1950 (2009).  To survive this inquiry, a pleading may not simply offer "labels and conclusions," __Bell Atlantic Corp. v. Twombly__, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  __Iqbal__, 129 S. Ct. at 1949.

Rather, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of each cause of action.  __Phillips v. County of Allegheny__, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted).  Moreover, a defendant may raise an affirmative defense "on a Rule 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint."  __Bethel v. Jendoco Constr'n Corp.__, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978).  Thus, a complaint may fail to survive a motion to dismiss either because (1) the plaintiff has failed to supply well-pled allegations in support of one or more elements of

8

a cause of action, or (2) the allegations of the complaint themselves establish that the plaintiff cannot prevail.

We will take up each of the Stars' claims in turn.

**A.    Violation Of Pennsylvania's RESDL**

The Stars aver that "[p]ursuant to 68 Pa. Con. Stat. Ann. § 7301(11), Defendants are liable to Plaintiffs for any and all actual damages suffered as a result of Defendants' violation of the Real Estate Seller's Disclosure Law, and the damages alleged in this complaint were proximately caused by Defendants' intentional concealment of known defects."  Pls.' Compl. ¶ 43. The Rosenthals respond that "the Plaintiffs failed to file their RESDL claim within the applicable two-year statute of limitations and, in fact, missed the statutory deadline by more than a year," so that "Count I of Plaintiffs' Complaint is time-barred and should be dismissed."  Defs.' Mem. in Supp. of Mot. Dismiss ("Defs.' Mem.") at 6.

The Stars retort that "there is no doubt that [they] have alleged facts sufficient to trigger Pennsylvania's tolling principles.  The only issue is whether tolling principles apply to claims under the RESDL, which is a question of first impression," Pls.' Resp. to Def.'s Mot. Dismiss ("Pls.' Resp.") at 8.  The

Stars suggest that we should answer this question in the affirmative (1) based on the legislative history of the RESDL, <u>id.</u> at 8-9; and (2) by analogy to other consumer protection statutes and common law claims.   <u>Id.</u> at 9-11.

> Under 68 Pa. Cons. Stat. Ann. § 7303,
>
> Any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form).   A signed and dated copy of the property disclosure statement shall be delivered to the buyer in accordance with section 7305 (relating to delivery of disclosure form) prior to the signing of an agreement of transfer by the seller and buyer with respect to the property.

Section 7308 adds that "[i]n completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect."   Section § 7311 provides that

> (a)   General rule. -- A residential real estate transfer subject to this chapter shall not be invalidated solely because of the failure of any person to comply with any provision of this chapter. However, any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of

this chapter shall be liable in the
amount of actual damages suffered by the
buyer as a result of a violation of this
chapter.  This subsection shall not be
construed so as to restrict or expand the
authority of a court to impose punitive
damages or apply other remedies
applicable under any other provision of
law.

(b)   Statute of limitations. -- An action for
damages as a result of a violation of
this chapter must be commenced within two
years after the date of final settlement.

As our Court of Appeals has explained, "[w]hen a state's

highest court has not spoken on a subject, we must attempt to

predict how that tribunal would rule.  In making such

determinations, we give due deference to the decisions of lower

Pennsylvania courts."  U.S. Underwriters Ins. Co. v. Liberty Mut.

Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996) (citations omitted).  Our

research suggests, however, that no Pennsylvania state or federal

court has considered whether § 7311(b) is subject to tolling.  We

therefore must interpret this provision from scratch, drawing on

the plain language of the statute as well as Pennsylvania

jurisprudence on tolling, limitations periods, and statutory

interpretation.

The Stars correctly note that "Pennsylvania courts apply

both the discovery rule and the doctrine of fraudulent concealment

11

to toll a statute of limitations," Pls.' Resp. at 7.  See, e.g.,
Pulli v. Ustin, 24 A.3d 421, 425 (Pa. Super. 2011) ("'In
Pennsylvania, there are two well-recognized legal constructs that
toll the running of the statute of limitations: the discovery rule
and the doctrine of fraudulent concealment.'") (quoting Coleman v.
Wyeth Pharmaceuticals, Inc., 6 A.3d 502, 510 (Pa. Super. 2010)).
But as the Stars themselves recognize, see Pls.' Resp. at 8,
Pennsylvania courts distinguish between "statutes of limitations"
and "statutes of repose," explaining that

> The difference between statutes of repose and
> statutes of limitations is that statutes of
> limitation[s] are procedural devices which bar
> recovery on a viable cause of action, where
> statutes of repose are substantive in nature
> because they extinguish a cause of action and
> preclude its revival.  In addition, statutes
> of limitation[s] begin to run from the time of
> an injurious occurrence or discovery of the
> same, whereas statutes of repose run for a
> statutorily determined period of time after a
> definitely established event independent of an
> injurious occurrence or discovery of the same.

Miller v. Stroud Twp., 804 A.2d 749, 752 (Pa. Commw. Ct. 2002)
(quoting Altoona Area Sch. Dist. v. Campbell, 618 A.2d 1129, 1134
(Pa. Commw. Ct. 1992)) (brackets in Miller).

Critically, tolling doctrines are inapplicable to
statutes of repose unless such doctrines are explicitly
incorporated into the given statute.  See, e.g., Westinghouse

Elec. Corp./CBS v. W.C.A.B. (Korach), 883 A.2d 579, 588 n.11 (Pa. 2005) ("[A] statute of repose may also prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute.  At the end of the time period specified in the statute, the cause of action ceases to exist, unless the claimant can bring himself within any tolling provision enunciated in that statute."); Commw., Dept. of Transp., Bureau of Driver Licensing v. Grubb, 618 A.2d 1152, 1155 n.1 (Pa. Commw. Ct. 1992) ("By definition, statutes of repose set a designated event for the statutory period to start running and they provide that at the expiration of the period, any cause of action is barred regardless of the usual reasons for tolling.") (internal quotation marks omitted); DaimlerChrysler Corp. v. Commw., 885 A.2d 117, 121 (Pa. Cmwlth. 2005) ("Because it is a statute of repose, taxpayers' rights to a refund are extinguished and once quashed, due process demands nothing because there are no rights to 'process.' Therefore, Seller's due process rights are not subject to equitable tolling as Seller suggests.") (citation omitted).

As the Supreme Court of Pennsylvania has explained, "the critical distinction in classifying a statute as one of repose or one of limitations is the event or occurrence designated as the

13

'triggering' event," Westinghouse Elec. Corp., 883 A.2d at 588
n.11.  While a statute of limitations has as its triggering event
"the point at which all the elements of the action have coalesced,
resulting in a legally cognizable claim," a statute of repose
"typically sets the triggering event as something other than the
point at which the cause of action arises."  Id.  See also Abrams
v. Pneumo Abex Corp., 981 A.2d 198, 211 (Pa. 2009) ("'Unlike an
ordinary statute of limitations which begins running upon accrual
of the claim, the period contained in a statute of repose begins
when a specific event occurs, regardless of whether a cause of
action has accrued or whether any injury has resulted.'") (quoting
City of McKeesport v. W.C.A.B. (Miletti), 746 A.2d 87, 91 (Pa.
2000)).  The triggering event under § 7311 is clearly not the
accrual of a cause of action since such a claim coalesces once (1)
"any person . . . willfully or negligently violates or fails to
perform any duty prescribed by any provision of this chapter," and
(2) "actual damages [are] suffered by the buyer as a result of a
violation of this chapter."  68 Pa. Cons. Stat. Ann. § 7311(a).
Instead, § 7311(b) (emphasis added) provides that "[a]n action for
damages as a result of a violation of this chapter must be
commenced within two years after the date of final settlement," an
event that will often fail to coincide with the occurrence of the

14

two elements described above.  Section 7311(b) thus appears to impose a statute of repose, not a statute of limitations.

The Stars note that § 7311(b) is entitled "Statute of limitations," not "Statute of repose."  Pls.' Resp. at 8.  But a title has minimal probative value regarding the actual character of this provision given that other Pennsylvania statutory provisions that indisputably impose statutes of repose are nonetheless sometimes identified by the General Assembly as statutes of limitations.  Compare, e.g., 13 Pa. Cons. Stat. Ann. § 2725 (defining "Statute of limitations in contracts for sale") with Nationwide Ins. Co. v. General Motors Corp./Chevrolet Motor Div., 625 A.2d 1172, 1174-75 (Pa. 1993) ("Section 2725 sets tender of delivery as the point at which the cause of action accrues . . . . [I]n breach of warranty cases the four-year statute of limitations is essentially a statute of repose."); 77 Pa. Cons. Stat. Ann. § 602 ("[S]aid limitations shall not take effect until the expiration of two years from the time of making of the most recent payment prior to date of filing such petition.") (emphasis added) with Zafran v. W.C.A.B. (Empire Kosher Poultry, Inc.), 713 A.2d 698, 701 n.12 (Pa. Commw. Ct. 1998) ("The period of limitations set forth in section 315 of the Act, 77 P.S. § 602, like other statutes of limitations under the Act, is not a pure

statute of limitations but is a statute of repose."); 42 Pa. Cons. Stat. Ann. § 5536(b)(2) (referring to "[t]he <u>limitation</u> prescribed by subsection (a)") (emphasis added) <u>with</u> <u>Miller</u>, 804 A.2d at 752 ("[S]ection 5536 of the Judicial Code is a statute of repose.").

The Stars also suggest that when the RESDL was enacted, "[t]he legislature reasoned that the two-year period would typically be adequate time to bring a claim because most 'problem[s] with [a] property [are] discovered within the first several weeks of occupancy,' and the statute 'gives the buyer two years to discover what the problems may be.'" Pls.' Resp. at 9 (quoting 1996 Pa. Leg. J. -- Senate 2139 (Jun. 18, 1996) (statement of Sen. Corman)) (brackets in Pl.'s Resp. and emphasis omitted). 1 Pa. Cons. Stat. Ann. § 1921(c)(7) provides that "[w]hen the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: . . . [t]he contemporaneous legislative history."

While we believe that the language of § 7311 unambiguously demonstrates that it imposes a statute of repose, to the extent this remains open to debate the legislative history that the Stars cite only fortifies our conclusion that this provision does <u>not</u> impose a statute of limitations. After all, if the tolling principles normally applicable to statutes of

16

limitations -- including the discovery rule -- were meant to apply
to the RESDL, there would have been no need for Senator Corman to
explain that "if there is a problem with the property it is
discovered within the first several weeks of occupancy, and here
it gives the buyer 2 years to discover what the problems may be."
1996 Pa. Leg. J. -- Senate 2139 (June 18, 1996) (statement of Sen.
Corman).  See also 1996 Pa. Leg. J. -- Senate 2138 (June 18, 1996)
(statement of Sen. Brightbill) ("What this does is shortens the
time period from 6 years to 2 years.  What that means is that
unless a consumer quickly and accurately determines what the
problems are with a property, they lose their cause of action.").
The suggestion by Senators Corman and Brightbill that a plaintiff
might lose a cause of action under the RESDL if a problem or
defect is not discovered within two years of final settlement
underscores that tolling principles do not apply to § 7311.

        Finally, the Stars contend that "[g]iven Pennsylvania's
concern for protecting consumers from fraud and misrepresentation,
and the Commonwealth's broad application of tolling principles in
general, the Pennsylvania Supreme Court would almost certainly
find that tolling principles are to be applied to claims under the
RESDL," Pls.' Resp. at 11.  In support of this argument the Stars
point to the applicability of tolling to claims under the UTPCPL,

                                   17

negligence and fraud claims, and certain federal claims. Id. at 9-11. Of course, whether tolling applies to common law and federal causes of action is an inquiry that sheds little light upon whether it similarly applies to the RESDL. As for the UTPCPL, our capacity to analogize this statute to the RESDL is hampered by the wholly different language the Pennsylvania General Assembly used to impose temporal limits upon claims under the UTPCPL. See, e.g., Gabriel v. O'Hara, 534 A.2d 488, 494 (Pa. Super. 1987) ("[T]here being no express limitation on private actions under the UTPCPL, and since their claims fall within the ambit of that statute, the six-year 'catchall' limitations period of section 5527(6) of the Judicial Code, 42 Pa. Cons. Stat. Ann. § 5527(6), applies."); 42 Pa. Cons. Stat. Ann. § 5527 ("Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.").

We further note that, as Judge Wettrick of the Allegheny County Court of Common Pleas has observed, the "Disclosure Law expands the seller's obligations and the buyer's remedies" as compared to the common law. Vaughn v. Drab, 73 Pa. D. & C. 4th 550, 556 (Pa. Com. Pl. 2005). Given the potency of the RESDL, it

should not be surprising that the Pennsylvania General Assembly chose to impose strict limits on when claims under this statute could be brought.

In the end, the language of Section 7311(b) makes plain that this statute is one of repose not amenable to tolling, and thus the Stars' arguments against this conclusion do not persuade. The complaint makes clear that the date of final settlement preceded October of 2009 -- when the Rosenthals allegedly visited the Stars in the house[4].  But the Stars did not file their complaint in this action until November 22, 2011 -- more than two years later.  Section 7311(b) thus bars the Stars from bringing suit under the RESDL, and we will grant the Rosenthals' motion to dismiss Count I of the complaint.[5]

---

[4] The Stars allege that the Rosenthals made representations during this visit that "were consistent with representations made . . . prior to the sale," Pls.' Compl. ¶ 18, and the only logical inference from this averment is that the Rosenthals' October, 2009 visit postdated the final settlement.

[5] The extinguishment of the Stars' RESDL claim does not, however, mean that the Stars cannot bring a breach of contract claim predicated upon allegedly false disclosures the RESDL mandates and which were incorporated into the agreement of sale.  See Rendon v. Ragans, 2009 WL 1514471, at *3 (W.D. Pa. 2009) (citations omitted) ("[T]he RESDL does not make itself the sole remedy here for an action emanating from a sale of real property.  At the same time, a breach of contract claim under Pennsylvania law is subject to a four-year limitations period.").

**B.   Counts II & IV: Misrepresentation**

In support of their fraudulent misrepresentation claim, the Stars contend that "[d]efendants made their representations, both prior to and after the sale, intending that the Plaintiffs would rely upon their representations, and the Plaintiffs did, in fact, justifiably rely to their detriment on the Defendants' misrepresentations." Pls.' Compl. ¶ 48.  As for their negligent misrepresentation claim, the Stars claim that "misrepresentations were made by the Defendants under circumstances in which the Defendants ought to have known of their falsity" and "with the intent to induce Plaintiffs to purchase the House," id. ¶¶ 58-59, causing damages to the Stars.  Id. ¶ 60.  The Rosenthals respond that "Plaintiffs' fraudulent and negligent misrepresentation claims are barred by the gist of the action doctrine because they are nothing more than contract claims masquerading as tort claims." Defs.' Mem. at 7.  The Stars retort that "Defendants' misrepresentations and omissions occurred prior to signing the AOS and were violations of duties imposed by common law and statute, and not by the AOS.  Thus, the gist of the action doctrine has no application." Pls.' Resp. at 16.

As Judge McVerry noted last year, "[t]he Pennsylvania Supreme Court has not expressly adopted the gist of the action

20

doctrine," though "both the United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted it would do so." PPG Indus., Inc. v. Generon IGS, Inc., 760 F. Supp. 2d 520, 527 n.1 (W.D. Pa. 2011). Judge Rambo described the gist of the action doctrine in Sarsfield v. Citimortgage, Inc., 707 F. Supp. 2d 546, 553 (M.D. Pa. 2010) (citations and internal quotations marks omitted), as follows:

> Tort actions lie for breaches of duties imposed by law as a matter of social policy, whereas contract actions lie only for breaches of duties imposed by consensual agreements between particular individuals.  Thus, a claim is limited to a contract claim when the parties['] obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts. On the other hand, if the contract is merely collateral to the wrong described, the existence of a contract does not prevent recovery in tort.  Pennsylvania courts have recognized four areas where the gist of the action doctrine precludes recovery in tort: (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

The gravamen of the Rosenthals' argument is that "absent the Agreement and the Seller Disclosure, the Rosenthals' purported

21

obligation to reveal known, material defects to the Plaintiffs
would not have materialized." Defs.' Mem. at 8.  This is plainly
untrue under Pennsylvania law.  As the Superior Court of
Pennsylvania explained in Roberts v. Estate of Barbagallo, 531
A.2d 1125, 1130-31 (Pa. Super. 1987),

> a vendor or his agent may be liable not only
> for failure to disclose a dangerous condition
> but also for failure to disclose material
> information.  Section 550, Restatement,
> Second, of Torts provides:
>
> § 550[.] Liability for Fraudulent Concealment
>
>> One party to a transaction who by
>> concealment or other action
>> intentionally prevents the other
>> from acquiring material information
>> is subject to the same liability to
>> the other, for pecuniary loss as
>> though he had stated the
>> nonexistence of the matter that the
>> other was thus prevented from
>> discovering.
>
> Liability under this section is encompassed by
> the Supreme Court's rule that fraud may arise
> by: 1) the making of a knowingly false
> representation of fact; 2) an intentional
> concealment of true facts which is calculated
> to deceive the other party; or 3) a
> nonprivileged failure to disclose certain
> facts to the other party. . . . Under § 550,
> the concealment must be intentional and it
> must relate to material information.

In the context of sales of real property, a seller not only has an
obligation not to intentionally conceal material information, but

22

must also avoid innocent misrepresentations of material facts. See Boyle v. Odell, 605 A.2d 1260, 1265 (Pa. Super. 1992) ("[I]f it is determined that a purchaser in a real estate transaction has suffered from fraud by the seller, even in the nature of an innocent misrepresentation of a material fact, a right of rescission is established.  Moreover, the purchaser is given the election of remedies; he may seek to rescind the deed, or in the alternative, may sue for damages.") (citations omitted).

In Onconome, Inc. v. Univ. of Pittsburgh, 2009 WL 5064481, at *11 (W.D. Pa. 2009), Judge Schwab emphasized that "the focus of analysis under [the gist of the action] doctrine is whether actions lie from a breach of the duties imposed as a matter of social policy or from the breach of duties imposed by mutual consensus pursuant to contract."  The Rosenthals' obligations to (1) disclose known, material defects to the Stars and (2) avoid innocent misrepresentations as to material facts arose independently of the Agreement and the Disclosure, though these obligations were to an extent codified in the parties' contract.[6]  As a result, the gist of the action doctrine does not

---

[6] In a sense, the Stars' breach of contract claim duplicates their misrepresentation claims -- not vice versa, as commonly seen when the gist of the action doctrine is invoked.

(continued...)

bar the Stars' misrepresentation claims, and we will deny the
Rosenthals' motion to dismiss Counts II and IV of the complaint.

### C. **Count III: Violation Of The UTPCPL**

Under Count III of the complaint, the Stars aver that
"[u]nder the UTPCPL, 73 P.S. § 201-2(4)(xii), it is unlawful for
one to engage in any deceptive or fraudulent conduct which creates
confusion or misunderstanding in the sale of real estate" and that
"[t]he fraudulent misrepresentations of Defendants were
intentionally false and deceptive and created a misunderstanding
on the part of Plaintiffs with respect to their purchase of the
House." Pls.' Compl. ¶¶ 52-53. The Rosenthals counter that (1)
"[t]he language of that section [§ 201-2(4)(xii)] does not pertain
to real estate transactions as Plaintiffs allege and is wholly
inapplicable to the case at bar," Defs.' Mem. at 9-10, and (2)
"[t]o the extent the Plaintiffs argue that their claim is based
upon [73 Pa. Cons. Stat. Ann. § 201-2(4)(xxi)] of the UTPCPL,
Count III of Plaintiffs' Complaint should still be dismissed
because Plaintiffs' claim is barred by the economic loss

---

[6] (...continued)
Cf. Sarsfield, 707 F. Supp. 2d at 553 ("Pennsylvania courts have
recognized four areas where the gist of the action doctrine
precludes recovery in tort: . . . (4) when the tort claim
essentially duplicates the breach of contract claim.").

doctrine."  <u>Id.</u> at 10.   The Stars respond that "the economic loss
rule cannot be applied to allow Defendants -- who are clearly
guilty of fraud -- to escape statutory liability."  Pls.' Resp. at
20.

> Under 73 Pa. Cons. Stat. Ann. § 201-2(4),
>
> "Unfair methods of competition" and "unfair or
> deceptive acts or practices" mean any one or
> more of the following:
>
> . . .
>
> (xii)    Promising or offering prior to time
>          of sale to pay, credit or allow to
>          any buyer, any compensation or
>          reward for the procurement of a
>          contract for purchase of goods or
>          services with another or others, or
>          for the referral of the name or
>          names of another or others for the
>          purpose of attempting to procure or
>          procuring such a contract of
>          purchase with such other person or
>          persons when such payment, credit,
>          compensation or reward is contingent
>          upon the occurrence of an event
>          subsequent to the time of the
>          signing of a contract to purchase;
>
> . . .
>
> (xxi)    Engaging in any other fraudulent or
>          deceptive conduct which creates a
>          likelihood of confusion or of
>          misunderstanding.

The Rosenthals are thus correct in their assertion that § 201-
2(4)(xii) has no relevance to the facts of this case, and we will

presume that the Stars bring Count IV pursuant to § 201-2(4)(xxi) -- also known as the "catchall provision."[7]   Section 201-3 provides in relevant part that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful," and Section 201-9.2(a) establishes a private cause of action for:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.  The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.  The court may award to the

---

[7] We note that while there is some question as to whether the UTPCPL applies to transactions in real property, those Pennsylvania courts to consider the question have thus far concluded that it does.  See Schwartz v. Rockey, 932 A.2d 885, 897 n.15 (Pa. 2007) ("[T]he Superior Court has held, based on policy considerations, that the private-right-of-action provision of the UTPCPL extends to real estate transactions, see Gabriel v. O'Hara, 368 Pa. Super. 383, 388-92, 534 A.2d 488, 491-93 (1987), although such decision has been subject to critical commentary as being inconsistent with the plain terms of the statute.").

> plaintiff, in addition to other relief
> provided in this section, costs and reasonable
> attorney fees.

The Rosenthals challenge the Stars' assertion of a
UTPCPL claim pursuant to the economic loss doctrine, which, as our
Court of Appeals explained in Duquesne Light Co. v. Westinghouse
Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995), "prohibits
plaintiffs from recovering in tort economic losses to which their
entitlement flows only from a contract."  This doctrine "gained
momentum," id., in our Courts of Appeals's estimation, in East
River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871
(1986), where the United States Supreme Court held in the
admiralty products liability context that "a manufacturer in a
commercial relationship has no duty under either a negligence or
strict products-liability theory to prevent a product from
injuring itself."

The doctrine received another infusion of energy from
Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), in which
our Court of Appeals concluded that (1) "the doctrine applies to
transactions between manufacturers and ordinary consumers," id. at
674; (2) "the district court correctly applied the economic loss
doctrine to appellants' fraudulent concealment claims," id. at
681; and (3) "the same policy justifications for applying the

doctrine to appellants' common law intentional fraud claims
support the doctrine's application to appellants' UTPCPL claims."
Id.  En route to these conclusions, Werwinski noted that
"[a]lthough the Supreme Court of Pennsylvania has not ruled on the
viability of the economic loss doctrine, an en banc panel of the
Pennsylvania Superior Court adopted the doctrine largely as set
forth in East River."  Id. at 671 (citing REM Coal Co. v. Clark
Equipment Co., 563 A.2d 128, 134 (Pa. Super. 1989)).

On the one hand, several formulations of the economic
loss doctrine appear to suggest that it bars the Stars' UTPCPL
claim.  While the Stars' entitlement to economic losses[8] does not
"flow[] only from a contract," Duquesne Light, 66 F.3d at 618, but
rather from Pennsylvania's broader policies against intentional
concealment and innocent misrepresentation of material facts
respecting sales of real property, see Section II.B, supra, it

---

[8] The Stars argue that "Defendants improperly
categorize the Stars' damages as being limited to solely economic
losses," since "certain of their damages are presently unknown
and, given that their harm relates to long-term water
infiltration issues, further investigation may reveal a mold
problem."  Pls.' Resp. at 18.  Given that the Stars do not allege
that they have suffered such injury in their complaint, we will
not consider this allegation in ruling on the Rosenthals' motion.
As for the Stars' claimed damages for emotional distress,
"because claims for emotional distress are not compensable under
the UTPCPL the fact that Plaintiffs have [pled] them is
immaterial."  Sarsfield, 707 F. Supp. 2d at 559 n.6.

nonetheless appears true that the Rosenthals' alleged violations

of the UTPCPL "'did not cause harm to the plaintiffs distinct from

those caused by the breach of contract,'" Werwinski, 286 F.3d at

678 (quoting Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.,

722 F. Supp. 184, 201 (D.N.J. 1989)), and that the "'loss of the

benefit of a bargain is the plaintiff's sole loss.'"  Id. at 680

(quoting Duquesne Light, 66 F.3d at 619).

     Notwithstanding these formulations and the expansion of

the doctrine in Werwinski, the above-cited cases nonetheless make

clear that the doctrine is not meant to apply to transactions in

real property.  Thus, as the Supreme Court explained in East

River, 476 U.S. at 871 (emphasis added), "a manufacturer . . . has

no duty . . . to prevent a product from injuring itself," and

suggested that the need for a remedy in tort is reduced when "the

product has not met the customer's expectations."  Id. at 872

(emphasis added).  In REM Coal, 563 A.2d at 134 (emphasis added),

the Pennsylvania Superior Court explained that the doctrine

applied in actions "involving a product that malfunctions where

the only resulting damage is to the product itself."  And in

Werwinski, 286 F.3d at 681 (emphasis added), which concerned a

products liability class action, our Court of Appeals suggested

that the economic loss doctrine was needed to avoid "exposing

manufacturers to substantially greater liability."  Critically,
Werwinski prefaced its conclusion that the economic loss doctrine
applies to the UTPCPL by noting that "the Pennsylvania UTPCPL . .
. only applies to products purchased for 'personal, family or
household purposes,'" id. (quoting 73 Pa. Cons. Stat. Ann. § 201-
9.2(a)), apparently unmindful that in Gabriel, 534 A.2d at 492-93,
the Pennsylvania Superior Court concluded that "sales of real
property [are] protected by the UTPCPL."

        Pennsylvania courts have not hesitated to permit claims
under the UTPCPL involving transactions in real property -- even
where plaintiffs claimed only economic losses.  See, e.g.,
Schwartz, 932 A.2d at 887-88 ("This appeal involves a civil action
initiated by home purchasers against the sellers for fraudulent
non-disclosure and/or concealment of water infiltration. . . .
Buyers pursued claims of common-law fraud and violations of the
Unfair Trade Practices and Consumer Protection Law, initially
seeking compensatory damages under both theories of relief, in
addition to treble damages and attorneys' fees under the UTPCPL.")
(remanding for Common Pleas Court to consider awarding treble
damages under the UTPCPL); Metz v. Quaker Highlands, Inc., 714
A.2d 447, 450 (Pa. Super. 1998) ("[A]ware of the needs of the
buyers, the seller failed to disclose and concealed the short-fall

30

of the property, refused to rectify the matter when the problem
was discovered and caused suit to be instituted to resolve the
case.  In light of such outrageous conduct, to allow the
rescission merely of the sales agreement without imposing a
corresponding penalty for fraudulent behavior in consumer-type
cases would do violence to the intent and purpose of the law
(UTPCPL) enacted specifically by the Legislature to curb and
discourage such future behavior."); Baker v. Cambridge Chase,
Inc., 725 A.2d 757, 759, 766 (Pa. Super. 1999) ("This case
involves a fraudulent residential real estate transaction. . . .
[T]he Bakers bring their fraud claim under the UTPCPL; they may,
therefore, be entitled to treble damages and attorney's fees in
addition to restitution, and they make demands for the same.").

        We therefore conclude that to the extent we are bound by
our Court of Appeals's prediction as to how the Supreme Court of
Pennsylvania would apply the economic loss doctrine to UTPCPL
claims, see, e.g., DeFebo v. Andersen Windows, Inc., 654 F. Supp.
2d 285, 294 (E.D. Pa. 2009) ("[T]his Court is bound by a Third
Circuit decision where that court has predicted how the
Pennsylvania Supreme Court will decide an issue."), Werwinski does
not apply to transactions in real property.  The economic loss

doctrine therefore does not bar the Stars' claim under the UTPCPL and we will deny the Rosenthals' motion to dismiss this claim.

####    D.    <u>Count V: Breach of Contract</u>

The Stars plead their breach of contract claim in the alternative, averring that "Defendants materially breached the Agreement of Sale by making the misrepresentations and omissions described above."  Pls.' Compl. ¶ 63.  The Rosenthals respond that "the Agreement which ostensibly forms the basis of Plaintiffs' breach of contract claim contains a release which effectively bars claims by the Plaintiffs arising out of the condition of the property at the time of sale."  Defs.' Mem. at 15.  In fact, the release notes that "[s]hould Seller be in default under the terms of this Agreement, or in violation of any seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity."  Agreement § 27.  Thus, to the extent the Rosenthals' alleged misrepresentations breached the Agreement, the Stars retain the

right to bring a claim based upon this breach,[9] and we will deny the Rosenthals' motion to dismiss Count V of the complaint.

### E.   Count VI: Unjust Enrichment

Finally, the Stars also assert an unjust enrichment claim in the alternative, alleging that "[t]he Defendants' retention of the full sale price of the House is wrongful because said money was obtained as the direct result of the defendants' intentional and knowing misrepresentations." Pls.' Compl. ¶ 66. The Rosenthals suggest that "Plaintiffs' unjust enrichment claim must be dismissed because there is an express contract which governs the parties' relationship." Defs.' Mem. at 15.

It is true that the Pennsylvania Supreme Court has "found the quasi-contractual doctrine of unjust enrichment inapplicable when the relationship between parties is founded on a written agreement or express contract." Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969). But as Judge Robreno

---

[9] The Stars' misrepresentation claims would also appear to survive the release clause, since such "clauses do not defeat a misrepresentation claim recognized under the LeDonne balancing test." Vaughn, 73 Pa. D. & C. 4th at 558. See also Rendon, 2009 WL 1514471, at *4 ("[E]ven where there is a clear 'as is' clause, Pennsylvania law allows a claim to proceed on the basis of misrepresentation as to the condition of the property.").

explained in <u>Philadelphia Housing Authority v. CedarCrestone,</u>

<u>Inc.</u>, 562 F. Supp. 2d 653, 656 (E.D. Pa. 2008),

> This does not mean . . . that the existence of
> an express contract between the parties will
> always preclude a <u>quantum</u> <u>meruit</u> claim.
> Rather, the Court must inquire at the motion
> to dismiss stage whether there is any dispute
> as to the existence of the express contract,
> and whether the scope of the contract includes
> the transaction that is the basis for the
> <u>quantum</u> <u>meruit</u> claim.

<u>See also</u> <u>18 KT.TV, LLC v. Entest Biomedical, Inc.</u>, 2011 WL

5374515, at *6 (M.D. Pa. 2011) ("[C]laims for unjust enrichment

can be pled in the alternative to breach of contract claims.").

Moreover, as the Superior Court of Pennsylvania has explained,

"[t]he general rule is that where a purchaser has been harmed by a

real estate broker's[10] misrepresentations, the purchaser has a

choice of remedies.  The purchaser may elect to rescind the deed

and to seek a return of the purchase money, or the purchaser may

elect to sue for damages."  <u>Roberts</u>, 531 A.2d at 1132.

Thus, though the Rosenthals apparently concede that a

contract exists between them and the Stars, the Stars may

nonetheless opt to rescind this contract.  Should they so elect,

---

[10] While the language of <u>Roberts</u> expressly concerns a <u>real estate broker's</u> misrepresentations, the logic of the decision makes clear that this general rule applies to a <u>seller's</u> misrepresentations as to real property as well.

they would be entitled to sue for unjust enrichment on the basis of any improvements they have made to the house.  Because the Stars have not yet chosen which remedy they will seek, we will permit them to plead an unjust enrichment claim in the alternative to the contract claim asserted in Count V of the complaint.